IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

IMMUNOCEPT, LLC, PATRICE ANNE LEE,
and JAMES REESE MATSON,
         Plaintiffs,

-vs-                                              Case No. A-05-CA-334-SS

FULBRIGHT & JAWORSKI, LLP,
         Defendant.

## ORDER

BE IT REMEMBERED on the 24th day of March 2006, the Court reviewed the file in the above-styled cause, and specifically, Defendant's Sealed Motion for Summary Judgment [#50]. Having considered the motion, the response, the relevant law, and the case file as a whole, the Court now enters the following opinion and orders.

### Background

The following background is based on the allegations in the First Amended Complaint. Plaintiff Immunocept, LLC ("Immunocept") is the owner of intellectual property rights, including Patent No. 5,571,418 ("the '418 patent"), concerning a medical device for the treatment of sepsis and septic shock in medical patients. First Am. Compl. ¶ 7. Immunocept obtained its interest in the intellectual property, along with "all ancillary rights and claims," pursuant to an assignment made by the original inventors—Patrice Anne Lee, Robert Wilton Prior, and James Reese Matson (collectively, "the Inventors"). Lee and Matson are also Plaintiffs in this suit. Id. ¶¶ 2–3.

Plaintiffs allege that in 1993, after successfully developing and testing their sepsis treatment device, which they refer to as a "large pore hemofilter," the Inventors sought the assistance of Defendant Fulbright & Jaworski, LLP ("Fulbright") to assist them in securing a patent for the device. *Id.* ¶ 12. According to Plaintiffs, the Inventors relied on Fulbright's expertise "to draft them a patent that would provide their invention with the broadest possible protection against infringement, and that would be relied on by potential industry and financial partners as being an effective patent." *Id.* The '418 patent was issued by the United States Patent and Trademark Office on November 5, 1996. *Id.*

Some time later, Plaintiffs were approached by Therakos, Inc. ("Therakos"), a subsidiary of Johnson & Johnson ("J&J"), in connection with the possible commercialization of their invention. *Id.* ¶¶ 14–15. Therakos engaged in extensive due diligence, and eventually, told Plaintiffs it was interested in meeting with them to "talk about structuring a deal." *Id.* ¶ 16. However, on April 15, 2002, Therakos informed Plaintiffs it was no longer interested in pursuing these discussions. According to Therakos, J&J's patent lawyers had reviewed the '418 patent and determined it was so poorly drafted[1] that it provided no real protection from copy-cat devices and methods. *Id.* ¶¶ 17–18. In the opinion of the J&J lawyers, "the patent was virtually worthless." *Id.* ¶ 18.

Plaintiffs allege Fulbright committed legal malpractice in prosecuting the '418 patent, which has caused "reasonable industry and financial partners [to] refuse to become involved with Plaintiffs in commercializing the invention." *Id.* ¶ 19. Accordingly, Plaintiffs contend they have suffered "lost profits, lost royalties, loss of time and money expended, and other remedial costs." *Id.*

---

[1] The basis of this allegation is that Fulbright attorney Sarah Brashears "amended the original claim language to include the restrictive transitional phrase 'consisting of' instead of the open 'comprising' transitional phrase." Pls.' Mot. Part. Summ. J. at 2.

-2-

Fulbright moves for summary judgment on five grounds: (1) Plaintiffs' damages are too speculative under Texas law; (2) Plaintiffs have no evidence that "consisting of" caused damage; (3) Immunocept was never a Fulbright client, and so is not a proper Plaintiff; (4) Plaintiffs have no evidence of gross negligence; and (5) Plaintiffs filed suit after the statute of limitations elapsed. Def.'s Mot. Summ. J. at 2. Because the Court agrees that Plaintiffs' cause of action is foreclosed by the statute of limitations, and also that any damages are too speculative to be recovered under Texas law, Fulbright is entitled to summary judgment.

## Discussion

### I.  Limitations

The Court begins by analyzing the limitations issue. Because Plaintiffs assert a claim for legal malpractice under Texas law, a two-year statute of limitations applies. *Apex Towing Co. v. Tolin*, 41 S.W.3d 118, 120 (Tex. 2001). Ordinarily, the limitations period begins to run on a cause of action "when the cause of action accrues, [i.e.,] when facts have come into existence that authorize a claimant to seek a judicial remedy." *Id.* However, the discovery rule applies to legal malpractice cases; accordingly, "limitations does not begin to run until the client discovers or should have discovered through the exercise of reasonable care and diligence the facts establishing the elements of a cause of action." *Id.* at 120–21.

There appears to be no dispute about many of the relevant dates. Plaintiffs filed the original complaint in this action on May 6, 2005. A tolling agreement was in effect for a period of 422 days, from March 4, 2004 until April 30, 2005. Def.'s Mot. Summ. J. at 11; Pl.'s First Am. Compl. ¶ 25. Thus, if Fulbright can show Plaintiffs discovered or should have discovered through the exercise of

reasonable care and diligence the facts establishing their claim on or before March 9, 2002, their claims are barred as a matter of law.

Plaintiffs contend "[i]t is undisputed that neither Plaintiffs nor any of their subsequent attorneys *actually* knew of Fulbright's malpractice until early April 2002, when J&J first raised the 'consisting of' issue." Pls.' Resp. Mot. Summ. J. at 16 (emphasis in original). Furthermore, they contend that because there are genuine issues of fact regarding when Plaintiff should have known about Fulbright's malpractice, summary judgment would be inappropriate.

Fulbright points to two dates on which it contends Plaintiffs should have discovered the facts giving rise to their cause of action. The first date is April of 2001. In support of its contention that Plaintiffs should have discovered the facts giving rise to their cause of action by that date, Fulbright points to an internal document produced by someone affiliated with Immunocept. Def.'s Mot. Summ. J., Ex. U. The document, which is dated April 2001, is entitled, "Immunocept, LLC - Strategy for Development of the CytoFlux Project (100 to 150 kD Hemofiltration for Sepsis)." *Id.* The document identifies certain decisions to be made, including whether certain expressly identified "assumptions" were valid. *Id.* The "assumptions" section of the document includes the following two paragraphs:

> Patent '418 is usefully effective in protecting hemofiltration with a 100 to 150 kD filter as therapy for sepsis in the USA. "Usefully effective" means that development for commercial distribution is reasonable.
>
> NOTE: This needs to [be] established with reasonable authority and documentation, and with some statement of how any infringement would be handled. This is essential before planning any future development efforts.

*Id.*

The Court declines to hold that this document constitutes evidence that Plaintiffs knew or should have known of their injury when the document was produced. After all, even though the document's author[2] obviously considered it important for business purposes to determine the effectiveness of the patent, there is no indication in the document that anyone at Immunocept had any reason to believe the patent was in fact ineffective. Indeed, Fulbright concedes Plaintiffs did not order a patent review at that time. Def.'s Mot. Summ. J., Ex. G at 87. The mere fact that someone at Immunocept expressed an interest in determining the patent's effectiveness does not in itself constitute a basis for concluding Plaintiffs had "discover[ed] a risk of harm to [their] economic interests." Def.'s Mot. Summ. J. at 12 (quoting *Brents v. Haynes & Boone, L.L.P.*, 53 S.W.3d 911, 914–15 (Tex. App.–Dallas 2001, pet. denied).

The second date Fulbright points to in support of its limitations defense is February 28, 2002. By that date, Plaintiffs' later-retained patent attorney, Thomas Felger of Baker Botts, had reviewed both the '418 patent and the file history in connection with his efforts to "develop a picket fence around the '418 patent." Def.'s Mot. Summ. J., Ex. R, Ex. S at 20–21, 28, 32, 37–38. Indeed, Felger testified he had discussed claim 1 of the '418 patent with his clients as early as 1999. *Id.* By February of 2002, it is undisputed that Felger had also reviewed the file history for the patent. *Id.*, Ex. S at 20–21, 37–38.

According to Plaintiffs' own expert, patent attorney Alan MacPherson, the error made by Fulbright in drafting the '418 patent was glaring and obvious. By using the phrase "consisting of" instead of the word "comprising," Fulbright drastically limited the scope of claim one of Plaintiffs'

---

[2] Matson testified at the deposition that he did not know who created the document, but it would have been created by someone at Immunocept. Def.'s Mot. Summ J., Ex. G at 84–85.

patent. *Id.*, Ex. Q at 36-37, 50. According to MacPherson, a review of the patent standing alone demonstrates the patent's limited scope. *Id.* at 37, 47. Moreover, because there are few circumstances under which use of the phrase "consisting of" would make sense, a mere review of the patent would also generate a question about why such a drafting choice was made. *Id.* at 47-48. Finally, MacPherson also testified that with a review of the file history—assuming it failed to show any special reason why "consisting of" was used—one would be able to generate an initial impression that negligence in drafting had occurred. *Id.* at 48, 50.

As Plaintiffs concede, "[k]nowledge acquired by an attorney, during and within the scope of his employment, is imputed to his client." *Am. Centennial Ins. Co. v. Canal Ins. Co.*, 810 S.W.2d 246, 256 (Tex. App.–Houston [1st Dist.] 1991); *overruled on other grounds*, 843 S.W.2d 480 (Tex. 1992). Thus, if Plaintiffs' patent attorney was aware of facts sufficient to put Plaintiffs on notice of the problem with their patent in February of 2002, limitations has run on their claims.

Plaintiffs contend that Fulbright's limitations defense rests on two faulty premises. First, Plaintiffs contend Fulbright has misinterpreted the basis of its malpractice claim. Plaintiffs explain that they do not contend the mere use of the phrase, "consisting of," constitutes malpractice. Rather, Plaintiffs contend it was Fulbright's unnecessary and gratuitous use of that phrase that amounted to a breach of the standard of care. The second assumption Plaintiffs argue Fulbright has erroneously made is that the scope of Felger's employment was sufficiently broad to encompass any knowledge he may have had relating to Plaintiffs' cause of action.

With respect to the first argument, Plaintiffs incorrectly ascribe to Fulbright an assumption that the mere use of the phrase, "consisting of," constitutes malpractice. Indeed, a review of the MacPherson testimony cited in Fulbright's motion makes clear that a review of both the patent *and*

*the file history* are necessary before an initial impression of negligence can be formed.

In any event, this argument is beside the point. MacPherson's testimony makes clear that the use of "consisting of" was drastically limiting, and a patent attorney could ascertain that fact without resort to the file history. Recognition of the inherent limitations of the patent should have been sufficient to put Plaintiffs' on notice of their cause of action. Indeed, there is no suggestion that it was Fulbright's malpractice that so upset J&J's attorneys and caused Plaintiffs to conclude there was something "terribly wrong" with their patent. *See* Pl.'s Resp. Mot. Summ. J., Ex. 16 at 80. Instead, according to Plaintiffs' own pleadings, J&J's concern was with the scope of the patent, and that concern, in itself, caused Plaintiffs to investigate and discover Fulbright's alleged malpractice.

Plaintiffs cannot colorably argue they were not on notice of their injury until they knew the specific details of their malpractice case. Indeed, the law does not require that Plaintiffs actually know all of the facts establishing their cause of action before limitations will begin to run. Instead, limitations will begin running when they "should have discovered through the exercise of reasonable care and diligence the facts establishing the elements of a cause of action." *Apex*, 41 S.W.3d at 120–21. As Fulbright points out, this occurs when Plaintiffs "discover[ed] a risk of harm to [their] economic interests." *Brents*, 53 S.W.3d at 914–15. According to Plaintiffs' amended complaint, they relied on Fulbright to "to draft them a patent that would provide their invention with the broadest possible protection against infringement, and that would be relied on by potential industry and financial partners as being an effective patent." First Am. Compl. ¶ 12. Once its patent counsel had been given an opportunity to review the patent and build "a picket fence" around it, Plaintiffs were imputed with the knowledge that Fulbright failed to accomplish that goal by securing a "drastically limited" patent. Thus, limitations began to run in at least February of 2002.

Plaintiffs' second argument is that Felger's duties did not include a determination of the strength of the '418 patent or a review of the prosecution history to determine the presence of malpractice. This is a specious argument. There is no question that Felger did in fact conduct a review of the '418 patent, the file history, and "the overall strategy for protecting Immunocept's technology." Def.'s Mot. Summ. J., Ex. T. The fact that Felger was not specifically charged with determining the scope of the phrase "consisting of" or with scouring the file history for evidence of negligence is beside the point. His responsibilities did require a review of both the patent and the file history. Moreover, the fact that Felger was charged with building a portfolio of patents around the '418 patent would have necessarily required him to, at the very least, develop some understanding of the scope of that patent. The undisputed summary judgment record establishes that a mere review of the claim language would demonstrate the presence of drastic limitations on the patent's scope.[3] Accordingly, no matter how the terms of Felger's assignment were couched, his mere review of the patent and the file history were sufficient to trigger the limitations period.

### III. Plaintiffs' Claims for Damages Fail as a Matter of Law

In the alternative to its limitations holding, the Court also holds Fulbright is entitled to summary judgment because Plaintiffs' damages are too speculative to be recovered as a matter of law. Under Texas law, "[b]oth the fact of lost profits, and their amount, must be established with reasonable certainty." *Burkhart Grob Luft und Raumfahrt GmbH & Co. KG v. E-Systems, Inc.*, 257 F.3d 461, 467 (5th Cir. 2001). The failure to demonstrate either of these facts will prevent recovery.

---

[3] Plaintiffs have resisted discovery about what Felger's actual impressions about the "consisting of" language were. *See generally* Def.'s Mot. Compel Pls. to Permit Questioning of Felger & Burke. Nonetheless, the Court assumes, based on MacPherson's testimony concerning the obviousness of the phrase's inherent limitations, that Felger understood the scope of the patent upon reviewing it.

*Id.* Both Texas courts and the Fifth Circuit "have consistently required persuasive evidence that a new or speculative business venture had a good chance of succeeding to allow a plaintiff to recover lost profits in a case arising out of that new or speculative venture." *Id.* at 467.

As Fulbright has demonstrated, the speculation required to develop any kind of damage model for Plaintiffs is simply too great to support a verdict for Plaintiffs in this case. Plaintiffs rely on the opinions of James Malackowski for their evidence of damages. According to Plaintiffs, Malackowski made a reasonable determination of the income potential of the '418 patent by examining the market available to the technology, market demand, and other conditions. Plaintiffs argue he made his valuations using industry-accepted standards for valuing patents, and appropriately discounted the income projections for uncertainty or risk.

However, the issue Fulbright takes with Malackowski's opinions is not so much in his methodology. Rather, Fulbright's argument is that Malackowski himself admits his damages opinions are grounded in a series of assumptions, which he himself admits are a source of great uncertainty. Def.'s Mot. Summ. J., Exs. L at 37, 42. Plaintiffs admit there has been no clinical testing on their product to determine its safety or effectiveness in treating sepsis. Defs.' Mot. Summ. J., Ex. H at 232. Indeed, no one has ever shown that there is a survival advantage obtained by treating humans with Plaintiffs' device. *Id.*, Ex. G at 64. Although Plaintiffs point to success in their animal studies, they admit that such studies do not always translate well into human studies. *Id.* at 184.

Moreover, Plaintiffs have no way of knowing yet whether they will obtain FDA approval for their device (which, of course, is largely attributable to the fact that such approval will likely depend on the outcome of clinical testing). Although Plaintiffs' medical expert, Dr. Rinaldo Bellomo, has

speculated that there is a "clear, real, and substantial" probability that Plaintiffs' invention will prove to have therapeutic benefits in treating humans with sepsis, the Court is unwilling to accept that such speculation can substitute for the actual clinical trials demanded by the FDA approval process. Because Plaintiffs cannot prove with any reasonable certainty that their device will prove safe and effective in humans, they are unable to demonstrate with reasonable certainty the fact and the amount of damages resulting from the alleged defect in the '418 patent.

Plaintiffs cite a series of cases for the proposition that "[a] plaintiff is not precluded from recovery where there [is] some uncertainty regarding the *extent* of a plaintiff's damages, but no uncertainty regarding the *fact* that the plaintiff was damaged." Pls.' Resp. Mot. Summ. J. at 14. The problem for Plaintiffs' damages theory, however, is more serious than they let on. Their evidence is insufficient to establish, with the certainty the law requires, not only the amount of the profits they would have made but for Fulbright's negligence, but the fact they would have made any profits at all. Accordingly, Fulbright is entitled to summary judgment.

Because the Court holds Fulbright is independently entitled to summary judgment on the basis of the two aforementioned grounds, the Court does not reach the remainder of the issues presented by Fulbright's motion.[4]

---

[4] The Court declines to formally reach the question of whether Immunocept is a proper party plaintiff for the additional reason that the state of the law is, at present, unclear on that issue. Fulbright argues that all legal malpractice assignments are invalid under Texas law. Indeed, the Fifth Circuit has said as much. *See Britton v. Seale*, 81 F.3d 602, 604 (5th Cir. 1996) ("Britton is correct in noting that the Texas cases discuss a variety of specific problems that would result from permitting assignment, but she is wrong in concluding that they limit the ban on assignment to cases presenting those problems. Instead, *Zuniga* and *Booth* appear to prohibit assignment altogether in order to prevent such problems from occurring."). The Fifth Circuit's interpretation of Texas law binds this Court no less than that court's interpretations of federal law. *FDIC v. Abraham*, 137 F.3d 264, 268–69 (5th Cir. 1998). Indeed, this Court may not depart from the holding in *Britton* "absent a subsequent state court decision or statutory amendment which makes [the decision] clearly wrong." *Id.* (quoting *Broussard v. S. Pac. Transp. Co.*, 665 F.2d 1387, 1389 (5th Cir. 1982) (en banc)).

Plaintiffs point to a pair of concurrences in *Mallios v. Baker*, 11 S.W.3d 157 (Tex. 2000), in which a majority of the justices of the Texas Supreme Court suggested that the Texas ban on legal malpractice claims is in fact only a

## Conclusion

In accordance with the foregoing:

IT IS ORDERED that Defendant's Sealed Motion for Summary Judgment [#50] is GRANTED.

IT IS FURTHER ORDERED that any and all other pending motions are DISMISSED AS MOOT.

SIGNED this the 24th day of March 2006.

/s/ Sam Sparks
SAM SPARKS
UNITED STATES DISTRICT JUDGE

---

limited ban, as evidence that the Fifth Circuit got the state law issue "clearly wrong" in *Britton*. *See id.* at 163 (Hecht, J., concurring) ("Although the Court recognized in *Zuniga*, as have most other courts faced with the issue, that legal malpractice claims should not be freely marketable, our disapproval of the assignment in that case did not bar all transfers of legal malpractice claims."); *see also id.* at 172 (Enoch, J., concurring) (suggesting there was no reason "why 'commercial' assignments of legal malpractice claims should be declared void as against public policy").

The statements of the majority of concurring justices in *Mallios* do in fact suggest the Texas Supreme Court would likely find the prohibition on legal malpractice assignments to have exceptions, among which the facts of this case may well fit. But those statements amount to mere dicta, and thus they are probably not capable of freeing the Court from the dictates of *Britton*. *See Abraham*, 137 F.3d at 269 (holding it is not clear "what is meant by 'a subsequent state court decision . . . which makes this Court's [prior] decision clearly wrong,' but, at a minimum, *a contrary ruling squarely on point is required*.") (emphasis added).

This result is somewhat unsatisfying given the deference federal courts generally owe to the Texas Supreme Court on questions of Texas law. *See Am. Int'l. Specialty Lines Ins. Co. v. Canal Indem. Co.*, 352 F.3d 254, 260 (5th Cir. 2003) ("In the absence of a final decision by the state's highest court on the issue at hand, it is the duty of the federal court to determine, in its best judgment, how the highest court of the state would resolve the issue if presented with the same case."). Fortunately, since Immunocept's claims fail on other grounds, the Court need not resolve this thorny question. Of course, were this case to proceed to trial, this issue would require a formal resolution.