UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

FILED
APR 07 2006
CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY _____ DEPUTY CLERK

| | | |
|---|---|---|
| IMMUNOCEPT, LLC, PATRICE ANNE LEE, AND JAMES REESE MATSON, | § § § | |
| Plaintiffs, | § § | |
| vs. | § § | CAUSE NO. A O5 CA 334 SS |
| FULBRIGHT & JAWORSKI, LLP, | § § | |
| Fulbright. | § | |

PLAINTIFFS' MOTION TO ALTER OR AMEND THE JUDGMENT

TO THE HONORABLE COURT:

COMES NOW Plaintiffs Immunocept, LLC, Patrice Anne Lee, and James Reese Matson (collectively "Plaintiffs") and pursuant to Federal Rule of Civil Procedure 59(e), file this Motion for Reconsideration of the Court's grant of summary judgment to Defendant Fulbright & Jaworski ("Fulbright") and would respectfully show the court as follows:

I.      ARGUMENT

On March 24, 2006, the Court granted summary judgment in favor of Fulbright on two alternate grounds: (1) that Plaintiffs should have discovered the Fulbright's malpractice prior to March 10, 2002, and (2) that Plaintiffs' damages are too speculative as a matter of law. Plaintiffs respectfully request that the Court reconsider this action and deny Fulbright's motion for summary judgment. Reconsideration is required here for the following reasons:

*First,* the court's determination as to whether Tom Felger should have discovered Fulbright's malpractice and whether this knowledge should be imputed to Plaintiffs requires the resolution of several explicitly factual assumptions. In resolving these fact issues, the Court

104

adopted an interpretation of the facts that, at least in part, purports to rely upon statements made by Alan MacPherson in his deposition. As the attached affidavit makes clear, however, these deposition statements were pulled from context and do not reflect MacPherson's actual opinion on these issues. Moreover, in reaching these expliclity factual conclusions, the court did not consider the testimony of Fulbright's own witnesses that expressly contradict these adopted conclusions. (Repass Depo at 96-97, Apx. Exh. 15; Kirk Depo at 22-237, Apx. Exh. 9; Paul Depo at 1717, Apx. Exh. 12; Repass Depo at 93-947, Apx. Exh. 15; Stout Depo at 217, Apx. Exh. 16). The presence of such genuine issues of fact on issues material to the Court's disposition of the case renders summary judgment improper.

*Second*, the Court's summary judgment conclusion that Tom Felger should have discovered the malpractice and had a duty to communicate that discovery to the Plaintiffs is the equivalence of a grant of summary judgment in favor of claim of malpractice against Felger. The record evidence is undisputed that prior to April 5, 2002, Felger did not discover nor did he even suspect the malpractice alleged by Plaintiffs. (Felger Depo at 89-907, Apx. Exh. 6). It goes without saying that Felger thus did not communicate any such concerns to the Plaintiffs. (Radunsky Depo at 175) 7, Apx. Exh. 14. Thus, if it is true, as the Court's opinion assumes, that Felger should have discovered the malpractice and had a duty to communicate that discovery to the Plaintiffs, then it necessarily follows that Felger committed negligence, i.e. malpractice, in failing to do either one of these things. Yet the summary judgment facts before this Court are wholly insufficient to support such a conclusion. Fulbright itself expressly admitted as much in response to an Interrogatory served by Plaintiffs, stating that "Fulbright has made no contention that Baker Botts was negligent in the legal work is performed or provided to Immunocept." (Defendant's Answers to Plaintiffs' Third Set of Interrogatories at p. 47, Apx. Exh. 4). If the

facts here do not, as suggested by Fulbright, support a summary judgment conclusion that Felger was negligent in his conduct, they can not support a summary judgment on limitations grounds.

*Third*, the Court failed to recognize that there is a genuine issue of material fact concerning the scope of Felger's employment. Plaintiffs and Felger uniformly testified that the scope of Felger's employment did not include a review of the strengths and weaknesses of the '418 Patent. (Felger Depo at 25-26; 28-29; 74-767, Apx. Exh. 6; Lee Depo. at 102-1037, Apx. Exh. 10; Matson Depo. at 80-81, 3017, Apx. Exh. 11; Radunsky Depo. at 121; 139-1417, Apx. Exh. 14). Yet, according to the testimony of Fulbright's own witnesses, discovering the malpractice at issue in this case would have required just such a comprehensive review of the '418 Patent, the file history, prior art, and related documents, including contemporary correspondence between the patent office and the prosecuting attorney and the prosecuting attorney and the client. (Kirk Depo at 22-237, Apx. Exh. 9; Paul Depo at 1717, Apx. Exh. 12; Repass Depo at 93-947, Apx. Exh. 15; Stout Depo at 217, Apx. Exh. 16). Further, MacPherson has testified that a reasonable patent attorney tasked with enhancing a client's patent portfolio (as Felger was here) would not have discovered Fulbright's malpractice as part of the performance of these assigned duties. (MacPherson Declaration at ¶¶ 7-8. 7, Apx. Exh. 1) Nor would such assigned responsibilities impose a duty on or provided a reason for Felger to communicate any information regarding the strength or scope of the '418 Patent. (Id.) In light of these genuine issues of material fact, summary judgment was improper. *See, e.g., Davis v. Mathis*, 846 S.W.2d 84, 87 (Tex.App.-Dallas 1992, no writ); *City of Galveston v. Shu*, 607 S.W.2d 942, 945 (Tex.Civ.App.--Houston [1st Dist.] 1980, no writ).

*Fourth*, the Court's opinion regarding damages fundamentally mischaracterizes the nature of damages sought by Plaintiffs. Plaintiffs are not seeking lost profits damages, but rather

they are seeking as damages the amount of diminution in the value of their patent caused by Fulbright's conduct. As described in his attached declaration, Plaintiffs' damage expert, James Malackowski, did not employ a lost profits analysis in computing his damage figure. (Malackowski Declaration at ¶¶ 8-127, Apx. Exh. 3). Rather, using recognized and established patent valuation methodologies, Malackowski calculated damages by determining the value of the '418 Patent had it been drafted to provide adequate protection and subtracted from that the "as-is" value of the patent, or the value of the patent in its present, narrow state. (Id.) Lost profits case law is thus irrelevant. Instead, the Court should look to analogous cases where patent valuation, or other types of asset valuation damages are sought.

*Fifth*, the Court's conclusion that damages are inherently uncertain fails to recognize that the parties are in substantial agreement on a great number of usually controversial market inputs. Indeed, Fulbright's own experts have indicated their substantial agreement with Plaintiffs' market input values on issues such as market size, market demand, market price, and market competition. (Ugone Depo at 43-447, Apx. Exh. 17; Kellum Depo at 186-1937, Apx. Exh. 8). According to Fulbright's valuation expert, Keith Ugone, there is only one thing preventing him from calculating a reasonable value of the patent, and that is (as he contends) the uncertainty surrounding whether the Plaintiffs' technology is effective at treating sepsis in humans. (Ugone Depo at 15-187, Apx. Exh. 17). And there is plenty of evidence supporting the conclusion that Plaintiffs' technology is effective. There is thus far less uncertainty about damages here than is present in most successful lost profits cases. Accordingly, summary judgment is improper.

*Sixth*, the Court's opinion treats the receipt of FDA approval as a separate and distinct uncertainty, unrelated to whether the device actually works. However, as Plaintiffs' regulatory expert, Martha Feldman, indicated in her deposition, the FDA process is merit-based. Effective

devices are approved while ineffective devices are not. (Feldman Depo at 301-3037, Apx. Exh. 7). Fulbright's own regulatory expert, Phillip J. Phillips, provided substantially similar deposition testimony, testifying that the FDA process is "evidence-based" and that approval will be granted to a device upon a showing that there is a "reasonable assurance" of the safety and effectiveness of that device. (Phillips Depo at 48-50; 381-837, Apx. Exh. 13). Thus, contrary to the Court's opinion, FDA approval does not constitute some separate and opaque layer of uncertainty. Rather, whether the FDA will approve a device and whether that device is effective constitutes the same question. Accordingly, the Court erred in treating FDA approval as a discrete uncertainty that prevented the calculation of reasonable certain damages.

*Seventh*, the Court erred in asserting that the only testing Plaintiffs can point to in support of their assertion that their technology is effective are their original animal tests. In reality, there is a substantial amount of testing and studies providing compelling evidence of the efficacy and safety of Plaintiffs technology. (Bellomo Declaration at ¶¶ 12-23, Apx. Exh. 4). Using hemofiltration technology to treat sepsis has been tested extensively in human beings and has yielded striking results, including the demonstration of increased survival and shortened and quicker recovery. (Id. at ¶¶ 15-17). Plaintiffs large pore hemofiltration ("LPHF") technology has itself also been studied extensively, both on the bench using whole human blood, and on more than 100 live human beings. (Id. at ¶¶ 19-20), Bellomo Depo at 47-50; 136-41, Apx. Exh. 5). These studies and tests have demonstrated important biological and physiological benefits associated using LPHF to treat sepsis in humans. (Id.). The overwhelming weight of the evidence generated by these numerous studies involving hemofiltration generally and LPHF technology specifically in the treatment of sepsis provides compelling evidence that LPHF is effective in treating sepsis in human beings. All that remains to definitively confirm this fact is

---

to conduct a randomized, clinical study appropriately structured to detect a survival benefit. Based the cumulative weight of this extensive testing, it is eminently reasonable to conclude that the results of this trial will be favorable. Even Fulbright's own sepsis expert appears to agree with Plaintiffs on this point, characterizing Plaintiffs conclusions not as unreasonable or unfounded, but only more optimistic than he was comfortable with. (Kellum Depo at 244-245, Apx. Exh. 8). At a minimum, the uncertainties associated with the Plaintiffs' technology are not so significant as to make it impossible to form a reasonable estimate of damages.

## II.    CONCLUSION

For the reasons discussed herein, as well as reasons described in Plaintiffs Response to Fulbright's Motion for Summary Judgment, which Plaintiffs herein incorporate and re-urge this court reconsider, Plaintiffs respectfully request this court reconsider its grant of summary judgment on behalf of Fulbright. Plaintiffs also respectfully requests pursuant to Local Rule CV-7(g) that the Court grant an oral hearing on this motion.

Respectfully submitted,

Michael P. Lynn, P.C.
State Bar No. 12738500
Jeffrey M. Tillotson, P.C.
State Bar No. 20039200
John Volney
State Bar No. 24003118
Jeremy A. Fielding
State Bar No. 24040895
LYNN TILLOTSON & PINKER, LLP
750 N. St. Paul Street, Suite 1400
Dallas, Texas 75201
(214) 981-3800 Telephone
(214) 981-3839 Facsimile

**ATTORNEYS FOR PLAINTIFFS
IMMUNOCEPT, LLC
PATRICE ANN LEE
JAMES REESE MATSON**

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the above and foregoing document has been served *via U.S. Regular Mail* on this the 6th day of April 2006:

David J. Beck, Esq.
Geoff Gannaway, Esq.
BECK, REDDEN & SECREST, L.L.P.
One Houston Center
1221 McKinney Street, Suite 4500
Houston, Texas 77010
(713) 951-3700 Telephone
(713) 951-3720 Facsimile

*Attorneys for Fulbright & Jaworski, LLP*

Jeffrey M. Tillotson, P.C.